1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TROY DEIMERLY,

          Plaintiff,

    v.

DAVE JOHNSON, *et al.*,

          Defendants.

Case No. C06-5002 RBL/KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**December 15, 2006**

17

18

19

20

21

22

23

24

25

26

27

28

      This civil rights action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4.  Plaintiff claims that he was denied proper medical care while he was incarcerated at the Aberdeen City Jail.  Presently before the Court is the motion for summary judgment of Defendants Captain Dave Johnson, Detective Sergeant C. J. Chastain and Officer Ron Morella ("Aberdeen Defendants").  (Dkt. # 49).  The Aberdeen Defendants argue that they did not treat Plaintiff with deliberate indifference during his forty-eight hour confinement in the Aberdeen City Jail.  Plaintiff has not responded to the motion.  Under Local Rule 7 (b)(2) failure to file papers in opposition to a motion may be deemed as an admission that the motion has merit.  Having reviewed the Aberdeen Defendants' motion, the Court recommends that it be granted and Plaintiff's claims against them be dismissed with prejudice.

REPORT AND RECOMMENDATION - 1

# I.  <u>FACTS</u>

Plaintiff does not dispute the Aberdeen Defendants' facts which are as follows:

**A.    Plaintiff's Arrest by Officer Morella**

Officer Morella arrested Plaintiff at about 4:30 p.m. on September 18, 2004.  The charge was possession of stolen property.  Officer Morella transported Plaintiff directly to the Aberdeen City Jail. Plaintiff said nothing to Officer Morella about needing medical attention for an alleged assault to his head by Robert E. Mills, the person whose property had allegedly been stolen. Furthermore, Plaintiff's appearance and demeanor gave no indication to Officer Morella that he had been assaulted.  (Dkt. # 49, ¶¶ 2-3).

**B.    Detective Sergeant Chastain's Interviews**

Detective Sergeant Chastain interviewed Plaintiff twice on September 20, 2004 relative to the stolen property charge. On the first occasion, at about 8:30 a.m., Plaintiff repeatedly dozed off during the interview, so Sgt. Chastain terminated the interview.  Sergeant Chastain's experience is that this kind of behavior is common for inmates, particularly in the morning.  Sergeant Chastain suspects disrupted sleep patterns are the cause.  (Dkt. # 51, ¶ 2).  Corrections Officer Jack Johnson confirms Sgt. Chastain's observations; inmates tend to stay up very late at night and to sleep in most of the morning hours. (Dkt. # 55, ¶ 9).

Sgt. Chastain conducted the second interview at about 3:38 p.m. This time the dozing off problem was absent.  Plaintiff appeared to be completely awake through the entire interview. As Sgt. Chastain questioned him about the stolen property, Plaintiff claimed he was only sitting in his apartment when a big black male came in, grabbed him by the throat, and started bashing his head in with a brick.  At that time Sgt. Chastain made an inspection of Plaintiff's head.  He saw not even a slight abrasion or anything else indicative of an assault, particularly with a brick, and he found no marks about Plaintiff's neck to corroborate that he had been forcefully grabbed by the throat. Plaintiff also said that the black male took him downstairs to the allegedly stolen car and the police came up and arrested him.  (Dkt. # 51, ¶ 3).

REPORT AND RECOMMENDATION - 2

1     In addition to the conflict between his claim of having been assaulted and his appearance,

2   Plaintiff's version of the events leading up to his arrest were completely at odds with the

3   investigation and circumstances of his arrest, as Sgt. Chastain knew them at the time.  (Id. at ¶ 4,

4   Exhs. 1-4).  Plaintiff never said anything to Sgt. Chastain about a need for "psychotropic" drugs or

5   any other medication. As the Detective Sergeant Chastain had no role with respect to the functioning

6   of the Aberdeen City Jail, he had no knowledge regarding medication Plaintiff was or was not

7   receiving at the Jail.  Plaintiff  never asked Sgt. Chastain to assist with securing medical attention.

8   Plaintiff said nothing about getting medical attention in either of the interviews. (Id. at ¶ 5).

9   **C.     Booking Process at the Aberdeen Jail**

10     Plaintiff was booked into the Aberdeen City Jail by Corrections Officer Jack Johnson

11   beginning at about 4:50 p.m on September 18, 2004.  Officer Johnson recalls him as a prisoner, but

12   has no specific recollection of the subject period of confinement from September 18-20, 2004.

13   Officer Johnson can, however, identify and explain certain documents generated by the confinement.

14   (See Dkt. 53, ¶¶ 2-6, Exh. 1-4 ).  According to the Medical Receiving Screening Form (Id. at Exh.

15   2), Plaintiff reported to Officer Johnson that he had a history of "seizures" and that he had a mental

16   disorder, schizophrenia.  Plaintiff reported that he was under the care of Scott Haga, a physician's

17   assistant, at Peninsula Community Health Services in Aberdeen.  Plaintiff had no medications with

18   him when he arrived at the Jail. (Dkt. # 55,  ¶ 5).

19   **D.     Plaintiff's Receipt of Medications in the Jail**

20     According to the Inmate Medication Record, Jack Johnson declaration Exhibit 5,

21   medications for Plaintiff arrived at the Jail between 4:50 p.m. and 8:30 p.m. on September 18, in the

22   following dosages:

23         Seroquel 1 tablet at noon and 1 tablet at bedtime
          Phenytoin 4 capsules at bedtime
24         Gabitril 1 tablet 2 times daily
          Ranitidine 1 tablet 2 times daily
25         Celexa. ½ tablet daily

26

27         Plaintiff departed from the Aberdeen City Jail at about 4:50 p.m. for his transfer to the Grays

28   REPORT AND RECOMMENDATION - 3

1  Harbor County Jail on September 20.  (Dkt. # 52,  ¶ 4; Dkt. # 54).  During the 48 hours that he was

2  confined at the Aberdeen Jail, Plaintiff received all of his medications in accordance with their

3  dosages, except the noon tablet of Seroquel on September 19th and the noon tablet of Seroquel on

4  September 20th, the afternoon of his transfer.  Both of these missed doses were unintended

5  oversights.  (Dkt. # 55, ¶ 7; Dkt. # 52, ¶ 2-3; Exh. 1).

6  **E.      Captain Dave Johnson**

7          Captain Dave Johnson has never been the Chief of the Aberdeen Police Department. He has

8  no recollection of having any contact with Plaintiff until after September 20, 2004.  During

9  September of 2004, he had no supervisory role relative to the Aberdeen Jail. To the best of his

10  knowledge, during that month he was never made aware of any complaints by Plaintiff regarding his

11  treatment at the Jail. (Dkt. # 53, ¶ 2).

12

13                                  **II.  DISCUSSION**

14  **A.      Standard of Review**

15          Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,

16  depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that

17  there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

18  law." Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the

19  nonmoving party fails to make a sufficient showing on an essential element of a claim on which the

20  nonmoving party has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

21          There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

22  rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

23  475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not

24  simply "some metaphysical doubt.").  *See also* Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute

25  over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring

26  a judge or jury to resolve the differing versions of the truth.  Anderson v. Liberty Lobby, Inc., 477 U.S.

27  242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626,

28  REPORT AND RECOMMENDATION - 4

1    630 (9th Cir. 1987).

2         The determination of the existence of a material fact is often a close question.  The court must

3    consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the

4    preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W. Elec. Service Inc.,

5    809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving

6    party only when the facts specifically attested by the party contradicts facts specifically attested by the

7    moving party.  Id.

8         The nonmoving party may not merely state that it will discredit the moving party's evidence at

9    trial, in hopes that evidence can be developed at trial to support the claim.  T.W. Elec. Service Inc., 809

10   F.2d at 630 (relying on Anderson, supra).  Conclusory, nonspecific statements in affidavits are not

11   sufficient, and "missing facts" will not be "presumed."   Lujan v. National Wildlife Federation, 497 U.S.

12   871, 888-89 (1990).

13

14   **B.   Plaintiff Has Failed to State a Claim Under the Eighth Amendment**

15        To state a claim under 42 U.S.C. § 1983: (1) the defendant must be a person acting

16   under color of state law; and (2) his conduct must have deprived the plaintiff of rights, privileges, or

17   immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527,

18   535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986).

19   Implicit in the second element is a third element of causation. See Mt. Healthy City School Dist. v.

20   Doyle, 429 U.S. 274, 286-87 (1977); Flores v. Pierce, 617 F.2d 1386, 1390-91 (9th Cir. 1980), cert.

21   denied, 449 U.S. 875 (1980). When a plaintiff fails to allege or establish one of the three elements,

22   his complaint must be dismissed.

23        In this case, Plaintiff claims that he was denied proper medical care while confined at the

24   Aberdeen City Jail.  Accordingly, his claims are analyzed under the Fourteenth Amendment Due

25   Process Clause, rather than the Eighth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 n. 16

26   (1979).  However, because pretrial detainees' rights under the Fourteenth Amendment are

27   comparable to prisoners' rights under the Eighth Amendment, the same standards are applied.  Frost

28   REPORT AND RECOMMENDATION - 5

1  v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1198); Redman v. County of San Diego, 942 F.2d 1435,

2  1441 (9th Cir. 1991).  The Eighth Amendment requires prison officials to take reasonable measures to

3  guarantee the health and safety of inmates. Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); Farmer

4  v. Brennan, 511 U.S. 825, 834 (1994).   An inmate claiming an Eighth Amendment violation relating

5  to health care must show that the prison officials acted with deliberate indifference to a serious

6  medical need.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The plaintiff must prove both an

7  objective and a subjective component. Hudson v. McMillan, 503 U.S. 1 (1992); McGuckin v. Smith,

8  974 F.2d 1050, 1059 (9th Cir. 1992).  First, the alleged deprivation must be, objectively, "sufficiently

9  serious." Farmer, 511 U.S. at 834.  A "serious medical need" exists if the failure to treat a prisoner's

10  condition would result in further significant injury or the unnecessary and wanton infliction of pain

11  contrary to contemporary standards of decency.  Helling v. McKinney, 509 U.S. 25, 32-35 (1993);

12  *McGuckin*, 974 F.2d at 1059.

13       Second, the prison officials must be deliberately indifferent to the risk of harm to the inmate.

14  Farmer, 511 U.S. at 834.  An official is deliberately indifferent to a serious medical need if the official

15  "knows of and disregards an excessive risk to inmate health or safety." Id. at 837.  Deliberate

16  indifference requires more culpability than ordinary lack of due care for a prisoner's health. Id. at

17  835.  In assessing whether the official acted with deliberate indifference, a court's inquiry must focus

18  on what the prison official actually perceived, not what the official should have known. *See* Wallis v.

19  Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  If one of the components is not established, the court

20  need not inquire as to the existence of the other.  Helling, 509 U.S. 25.

21       Prison authorities have "wide discretion" in the medical treatment afforded prisoners. Stiltner

22  v. Rhay, 371 F.2d 420, 421 (9th Cir. 1971), *cert. denied*, 387 U.S. 922 (1972).  To prevail on an

23  Eighth Amendment medical claim, the plaintiff must "show that the course of treatment the doctors

24  chose was medically unacceptable under the circumstances . . . and the plaintiff must show that they

25  chose this course in conscious disregard of an excessive risk to plaintiff's health."  Jackson v.

26  McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), *cert. denied*, 519 U.S. 1029.  A claim of mere

27  negligence or harassment related to medical problems is not enough to make out a violation of the

28  REPORT AND RECOMMENDATION - 6

1    Eighth Amendment. <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).  Simple malpractice,

2    or even gross negligence, does not constitute deliberate indifference.  <u>McGuckin</u>, 974 F.2d at 1059.

3    Similarly, a difference of opinion between a prisoner-patient and prison medical authorities regarding

4    what treatment is proper and necessary does not give rise to a § 1983 claim.  <u>Franklin</u>, 662 F.2d at

5    1344; <u>Mayfield v. Craven</u>, 433 F.2d 873, 874 (9th Cir. 1970).

6         Plaintiff contends that his due process rights were violated when the Aberdeen Defendants

7    failed to provide him with his psychotropic medication and refused medical attention for a head injury

8    Plaintiff alleges he received when the reported victim hit him in the head with a brick. (Dkt. 9, p. 4 ).

9    After viewing all of the summary judgment evidence in the light most favorable to the Plaintiff, the

10   Court must conclude that Plaintiff's constitutional claim fails as a matter of law.   As noted above,

11   Plaintiff has not responded to the motion for summary judgment and has provided no evidence

12   beyond the bare allegations found in Plaintiff's Complaint.  On the other hand, the undisputed facts in

13   the record reflect that Plaintiff was provided all of the medications which were brought to the

14   Aberdeen City Jail on his behalf.  Of those medications, Plaintiff was to receive 16 doses during the

15   48 hours that he was confined at the Aberdeen City Jail.  He received 14 of the doses.  He missed the

16   second and fourth doses out of four for one of the medications (Seroquel).   However, there is no

17   medical evidence indicating that Plaintiff was somehow harmed by not being provided with the

18   missed doses of Seroquel or that the missed doses amounted to any deliberate medical indifference

19   on the part of any of the named defendants.

20        Plaintiff's allegations relating to the need for medical attention following the alleged assault

21   are similarly unsupported by any evidence in the record.  Of the three named defendants, only

22   Defendant Chastain was aware of Plaintiff's allegations in this regard.  The undisputed record reflects

23   that Plaintiff's appearance and demeanor were not that of a person who had been assaulted.  (Dkt. #

24   50, ¶¶ 2-3).  Plaintiff's sleepy behavior appeared to be common inmate behavior to the Defendants

25   and appeared to them to have resolved by later that afternoon.  (Dkt. # 51, ¶ 2; Dkt. # 55, ¶ 9).  In

26   addition, inspection of Plaintiff's person revealed no marks or abrasions to support Plaintiff's claims

27   that he had been bashed on the head with a brick and grabbed by the throat.

28   REPORT AND RECOMMENDATION - 7

1    Accordingly, as the record is devoid of any conduct on the part of the named Aberdeen

2    Defendants manifesting conscious disregard for Plaintiff's health, the Court finds that the motion for

3    summary judgment should be granted.

4

5                                   **III.  CONCLUSION**

6    For the reasons stated above the court should **GRANT** the Aberdeen Defendants' motion for

7    summary judgment and dismiss Plaintiff's claims against them with prejudice.  A proposed order

8    accompanies this Report and Recommendation.   Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of

9    the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report

10   to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver

11   of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating

12   the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on

13   **December 15, 2006**, as noted in the caption.

14

15   DATED this  17th  day of November, 2006.

16

17

18

19

20                                   Karen L. Strombom
                                     United States Magistrate Judge
21

22

23

24

25

26

27

28   REPORT AND RECOMMENDATION - 8