UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TROY DEIMERLY,

    Plaintiff,

v.

DAVE JOHNSON, *et al*.,

    Defendants.

Case No. C06-5002 RBL/KLS

REPORT AND RECOMMENDATION

**NOTED FOR:**
**December 15, 2006**

    This civil rights action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4. Plaintiff claims that his constitutional rights were violated while he was incarcerated at the Grays Harbor County Correctional Facility (GHCCF). Presently before the Court is the motion for summary judgment of Defendants Grays Harbor County Sheriff Michael J. Whelan, GHCCF Superintendent David Christensen, Corrections Officer Josh D. Burgess, and Corrections Officer Dallas Greer ("Grays Harbor County Defendants"), seeking dismissal of Plaintiff's claims with prejudice. (Dkt. # 38). Plaintiff has not responded to the motion. Under Local Rule 7 (b)(2) failure to file papers in opposition to a motion may be deemed as an admission that the motion has merit. Having reviewed the Grays Harbor County Defendants' motion, the Court recommends that it be granted and Plaintiff's claims against them be dismissed

REPORT AND RECOMMENDATION - 1

with prejudice.

# I. FACTS

Plaintiff does not dispute the Grays Harbor Defendants' facts which are as follows:

**A.  Confinement at GHCCF**

Between September 20, 2004 and August 10, 2005, with the exception of some limited stays at Western State Hospital, Plaintiff was confined at GHCCF. (Dkt. # 39). Thereafter, Plaintiff was transferred to the Washington State Department of Corrections and is presently confined at the Stafford Creek Department of Corrections. (Dkt. # 9). Plaintiff complains that while he was confined at GHCCF, he was housed on the floor, that his personal property and legal paper work were inspected and seized, and that he was intimidated and interrogated during his transport to the Department of Corrections. (Id., p. 5-6). Plaintiff did not file any grievances regarding any of these allegations. (Dkt. # 39). Plaintiff also alleges that he was not given proper medical care, for which he filed two grievances. Those allegations are discussed more fully in Paragraph I.B. below.

During the time that Plaintiff was confined at GHCCF, he was at times assigned to a floor unit. (Dkt. # 39). GHCCF inmates are sometimes assigned to sleep on a mattress on the floor when all lower, mid and upper bunks in a cell have already been assigned or some other need prompts the assignment, such as a person with a seizure disorder needing to avoid being housed at a height. (Id.). Just like other inmates, Plaintiff was at times assigned to a floor unit during his confinement at GHCCF. Even if assigned to a floor unit, if a bunk becomes available in the cell, there is nothing to prevent the inmate from using the bunk. (Id.).

As part of an inmate's processing, Defendant Burgess looks through an inmate's property, including any papers, to ensure that there is nothing that can be used as a weapon. (Dkt. # 40). Defendant Burgess is aware that he should not and he does not, read documents that appear to be legal papers. (Id.). After inspection, papers are placed in an envelope, which then travel with the inmate to the next destination, along with any other property. (Id.). The only legal document which Defendant

REPORT AND RECOMMENDATION - 2

Burgess reads is the Judgment and Sentence under which the inmate is being held. This document is read for the purpose of ensuring that the correct person is being processed under the correct Judgment and Sentence. (Id.). The Judgment and Sentence is kept separate from the inmate's other papers. (Id.).

Corroborative of this processing is the "Reception Center Offender Personal Property Receipt," submitted by Plaintiff which reflects that when Plaintiff arrived at the DOC, his "legal work" accompanied him. (Dkt. # 9, Exh. M).

Defendant Greer states that it is his practice to have as little conversation during a transport as possible and denies making the statement to Plaintiff that "there would be grave reprocussions [sic] for this." (Dkt. # 41). Defendant Greer was not aware at the time of the transport that Plaintiff had a claim or anticipated making a claim against Grays Harbor County and first learned of the claim when he was served with this lawsuit. (Id.).

**B.     Filing of Grievances**

The GHCCF grievance procedure is described in "Policy 603 Corrections," entitled "Inmate Grievances," of the Grays Harbor County Sheriff's Department Corrections Division Policies and Procedures. (Dkt. # 39, Exh. A). Inmates receive a copy of the Inmate Handbook which notifies the inmate of the availability of the grievance procedure. (Id., Exh. B; p. 13).

Plaintiff filed two grievances. On April 5, 2005, Plaintiff submitted a "Grays Harbor County Corrections Facility Inmate Grievance Report" relating to dental treatment, stating "I must try and exaust [sic] my Grievance Remedys [sic] before making a motion to the U.S. District Court." (Id., Exh. C). This grievance has not been raised in this lawsuit.

On May 25, 2005, Plaintiff submitted a second grievance relating to the administration of his medications, stating that he had been prescribed certain medications at Western State Hospital, but that "[h]ere at the Jail, the nurse - doctor, decides what she wants me to be given and [the] doses." (Id., Exh. D).

The first page of the grievance form is used by the inmate to describe the nature of the grievance.

REPORT AND RECOMMENDATION - 3

The second page of the form is used to memorialize the processing of the grievance. After the inmate completes the first page, the grievance is then submitted to a corrections officer who investigates the grievance and reports his findings and recommendations on the form. The grievance is next reviewed by a jail supervisor and the findings are then discussed with the inmate. (Id.)

Thereafter, inmates have forty-eight hours to appeal the grievance decision. (Id., Exh. A). The inmate must put the appeal in written form and submit it to the Jail Lieutenant. Appeals are final with the Jail Superintendent's decision. An appeal to the Jail Superintendent is the last available avenue for relief under the grievance policy. If the inmate does not appeal the jail supervisor's decision, then the Jail Superintendent will review the grievance form and may make any written comments deemed appropriate. (Id.).

The grievances were not pursued by the Plaintiff past the level of jail supervisor review. (Id.). When the time for appeal had passed and no appeal had been made, Jail Superintendent Christensen reviewed the grievances and noted as much on the forms, but these reviews were not made a part of the appeal process. (Id.).

Plaintiff alleges that Defendants Sheriff Whelan and Jail Superintendent Christensen failed to supervise and/or implement procedures regarding the medical care of inmates. (Dkt. # 9, p. 5). David Christensen and Michael Whelan were not involved in the supervision, provision or the administration of antipsychotic medications to Plaintiff while he was confined at GHCCF. (Dkt. # 39, # 42). Both David Christensen and Michael Whelan deny having knowledge that Plaintiff ever suffered any serious medical need while he was confined at GHCCF. (Dkt. # 39, # 42). During Plaintiff's confinement at GHCCF, his medications and medical care were administered by an independent contractor, and Plaintiff received ongoing medical care. (*See* Dkt. # 44).

REPORT AND RECOMMENDATION - 4

## II. DISCUSSION

**A.   Standard of Review**

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. Id.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim. T.W. Elec. Service Inc., 809 F.2d at 630 (relying on Anderson, supra). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

REPORT AND RECOMMENDATION - 5

B.     **Plaintiff Has Failed to Exhaust His Administrative Remedies As to Medical Care**

The Prison Litigation Reform Act states that:

> [n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statues of the United States (42 U.S.C. § 1983), or any other federal law, by a prisoner confined in any jail, prison or other correction facility, until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

By mandating exhaustion, Congress enabled corrections officials to address prisoner complaints internally, often resulting in the correction of administrative problems, the filtering out of frivolous claims, and ultimately a clear record of the controversy. Porter v. Nussle, 534 U.S. 516 (2002). Where exhaustion was once discretionary, it is now mandatory. Id. "All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (quoting Booth v. Churner, 532 U.S. 731, 739 (2001)). The Porter Court ruled that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Id. at 520. The Supreme Court recently reaffirmed this in Woodford v. Ngo. 548 U.S. ___, No. 05-416 at 1 (2006). In that case, the Court not only upheld the requirement that the inmates fully exhaust available administrative remedies, but it also held that those attempts needed to be done in a timely manner. Id. at 11.

The PLRA exhaustion requirement creates an affirmative defense that a defendant may raise in an unenumerated Rule 12(b) motion. Wyatt v. Terhune, 315 F.3d 1108, 1117-19 and nn. 9 & 13 (9th Cir. 2003). The Grays Harbor Defendants raised this affirmative defense. (Dkt. # 36, p. 4).

The undisputed record reflects that, at best, Plaintiff raised some medical issues in two separate grievances that were never appealed past the jail supervisor level of review.[1] As to the

---

[1] Defendants state that even if Plaintiff's two grievances were considered exhausted for purposes of the PLRA, his suit would then constitute a "mixed" complaint containing both exhausted and unexhausted claims that must be dismissed in its entirety without prejudice. In the event of a mixed action, however, proper treatment is dismissal of the unexhausted claims or dismissal of the defective complaint with leave to amend if the unexhausted and exhausted claims are intertwined.

REPORT AND RECOMMENDATION - 6

1  remaining allegations set forth in Plaintiff's Complaint, no grievances were ever filed.

2  Therefore, contrary to the requirements of the Prison Litigation Reform Act, Plaintiff has
3  failed to exhaust his available administrative remedies and Defendants are entitled to dismissal of
4  Plaintiff's claims without prejudice.  Defendant argues in the alternative that they are entitled to
5  summary dismissal of all of Plaintiff's claims because Plaintiff has failed to state a claim under 42
6  U.S.C. § 1983.

### C.   Plaintiff Has Failed to State a Claim 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983: (1) the defendant must be a person acting under color of state law; and (2) his conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986). Implicit in the second element is a third element of causation. *See* Mt. Healthy City School Dist. v. Doyle, 429 U.S. 274, 286-87 (1977); Flores v. Pierce, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 875 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed.

Plaintiff must also allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint.  Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 n.58 (1978). A theory of *respondeat superior* is not sufficient to state a § 1983 claim. Padway v. Palches, 665 F.2d 965 (9th Cir. 1982).

---

Lira v. Herrera, 427 F.3d 1164 (9th Cir. 2005), *petition for cert. filed*, 74 USLW 3425 (Jan. 6, 2006) (No. 05-878).

REPORT AND RECOMMENDATION - 7

### 1. **Denial of Medical Care**

Plaintiff claims that he was denied proper medical care while confined at GHCCF. Accordingly, his claims are analyzed under the Fourteenth Amendment Due Process Clause, rather than the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979). However, because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, the same standards are applied. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1198); Redman v. County of San Diego, 942 F.2d 1435, 1441 (9th Cir. 1991). The Eighth Amendment requires prison officials to take reasonable measures to guarantee the health and safety of inmates. Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); Farmer v. Brennan, 511 U.S. 825, 834 (1994). An inmate claiming an Eighth Amendment violation relating to health care must show that the prison officials acted with deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The plaintiff must prove both an objective and a subjective component. Hudson v. McMillan, 503 U.S. 1 (1992); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). First, the alleged deprivation must be, objectively, "sufficiently serious." Farmer, 511 U.S. at 834. A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. Helling v. McKinney, 509 U.S. 25, 32-35 (1993); *McGuckin*, 974 F.2d at 1059.

Second, the prison officials must be deliberately indifferent to the risk of harm to the inmate. Farmer, 511 U.S. at 834. An official is deliberately indifferent to a serious medical need if the official "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. Deliberate indifference requires more culpability than ordinary lack of due care for a prisoner's health. Id. at 835. In assessing whether the official acted with deliberate indifference, a court's inquiry must focus on what the prison official actually perceived, not what the official should have known. *See* Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). If one of the components is not established, the court need not inquire as to the existence of the other. Helling, 509 U.S. 25.

REPORT AND RECOMMENDATION - 8

Prison authorities have "wide discretion" in the medical treatment afforded prisoners. Stiltner v. Rhay, 371 F.2d 420, 421 (9th Cir. 1971), *cert. denied*, 387 U.S. 922 (1972).  To prevail on an Eighth Amendment medical claim, the plaintiff must "show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), *cert. denied*, 519 U.S. 1029.  A claim of mere negligence or harassment related to medical problems is not enough to make out a violation of the Eighth Amendment.  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Simple malpractice, or even gross negligence, does not constitute deliberate indifference.  McGuckin, 974 F.2d at 1059. Similarly, a difference of opinion between a prisoner-patient and prison medical authorities regarding what treatment is proper and necessary does not give rise to a § 1983 claim.  Franklin, 662 F.2d at 1344; Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970).

Plaintiff makes only conclusory allegations of inadequate medical procedures and oversight with respect to the medical care of inmates against Defendants Whelan and Christensen and makes no allegations of specific conduct by these Defendants.  Plaintiff must provide evidence of how these individually named defendants caused or personally participated in causing the harm alleged in the complaint. Arnold, 637 F.2d at 1355.  The only specific allegation contained in Plaintiff's Complaint relating to medical care relates to the failure to receive prescribed psychotropic medications, which is an allegation directed to Defendant Alves.  These allegations are the subject of a separately pending motion for summary judgment (Dkt. # 44), and a separate Report and Recommendation, which the Court is submitting simultaneously with this Report and Recommendation (also noted for December 15, 2006).

After viewing all of the summary judgment evidence in the light most favorable to the Plaintiff, the Court concludes that Plaintiff's constitutional claim fails as a matter of law.  As noted above, Plaintiff has not responded to the motion for summary judgment and has provided no evidence beyond the bare allegations found in his Complaint.  On the other hand, the undisputed facts in the record reflect that Plaintiff received ongoing medical care and his prescribed medications.

REPORT AND RECOMMENDATION - 9

1  It is also clear that Defendants Whelan and Christensen had no personal involvement in Plaintiff's
2  treatment or his medications.
3       Accordingly, as the record is devoid of evidence that Defendants Whelan and/or Christensen had
4  any personal involvement with the administration of Plaintiff's pyschotropic medications or that they
5  engaged in personal acts manifesting a conscious disregard for Plaintiff's health, the Court recommends
6  that the motion for summary judgment be granted.

### 2. Floor Assignments

Prison officials must provide all prisoners with adequate food, clothing, shelter, sanitation, medical care and personal safety. Wolfish v. Levi, 573 F.2d 118 (2nd Cir. 1978), *overruled on other grounds by* 441 U.S. 520 (1979). To state a Section 1983 claim that prison conditions violated his Eighth Amendment rights, a prisoner must show that prison officials acted with deliberate indifference. Wilson v. Seiter, 111 S.Ct. 2321, 2326 (1991). Prison officials are deliberately indifferent if they manifest unnecessary and wanton disregard for the allegedly unconstitutional prison conditions. Id. at 2326-27. Oltarzewski v. Crist, 967 F.2d 589 (9th Cir. 1992). Double or triple celling of inmates is not *per se* unconstitutional. Rhodes v. Chapman, 452 U.S. 337, 348 (1981), but overcrowding accompanied by unsanitary and dangerous conditions can constitute an Eighth Amendment violation, provided an identifiable human need is being deprived. Toussaint v. Yockey, 722 F.2d 1490, 1492 (9th Cir. 1984). Thus, it is for the Court to determine whether the plaintiff has alleged sufficient prison conditions, which in "concert amounted to deprivation of a human necessity, thereby rendering the cumulative effect of the prison conditions unconstitutional." *See, e.g.*, Williams v. Griffin, 952 F.2d 820, 824-25 (4th Cir. 1991).

In this case, Plaintiff alleges that he was assigned to sleep on a mattress on the floor of his cell for twenty-seven days during his confinement at GHCCF. (Dkt. # 9, p. 5). GHCCF inmates are sometimes assigned to sleep on mattresses when all of the lower, mid and upper bunks in the cell had already been assigned. (Dkt. # 39). Even if assigned to a floor unit, if a bunk becomes available in the cell, the inmate may use the bunk. (Id.).

REPORT AND RECOMMENDATION - 10

There is no summary judgment evidence in this case of any deprivation of human necessities in addition to the floor assignment or overcrowding giving rise to a constitutional deprivation. Therefore, the Court recommends that Defendants' motion for summary judgment be granted and Plaintiff's claims be dismissed with prejudice.

### 3. **Inspection of Legal Papers**

Inmates have "a constitutional right of access to the courts." Cornett v. Donovan, 51 F.3d 894, 897 (9th Cir. 1995). That right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers" by providing them with "adequate law libraries or adequate assistance from persons trained in the law." Lewis v. Casey, 518 U.S. 343, 346 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 828 (1977)). However, because "meaningful access to the courts is the touchstone," to prevail on an access to courts claim, plaintiff must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Cornett, 51 F.3d at 897 (citing Bounds, 430 U.S. at 823). An inmate must show an inadequacy of the prison library or legal assistance program caused an actual injury or prejudice such as an inability to meet a filing deadline or present a claim. See Lewis, 518 U.S. at 348. In addition, a prison may adopt regulations which impinge on an inmate's constitutional rights if those regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78 (1987). Legitimate penological interests include "security, order, and rehabilitation." Procunier v. Martinez, 416 U.S. 396, 413 (1974).

Plaintiff alleges that Defendant Burgess inspected his personal property, which included his legal paperwork, prior to his transport to the Department of Corrections. (Dkt. # 9, p. 5). Defendant Burgess states that as part of an inmate's processing, he inspects an inmate's property, including any papers, to ensure that there is nothing that can be used as a weapon. (Dkt. # 40). Defendant Burgess is aware that he should not and he does not, read documents that appear to be legal papers. (Id.). After inspection, papers are placed in an envelope, which travel with the inmate to the next destination, along with any other property. (Id.). The only legal document which Defendant

REPORT AND RECOMMENDATION - 11

Burgess reads is the Judgment and Sentence under which the inmate is being held.  This document is read for the purpose of ensuring that the correct person is being processed under the correct Judgment and Sentence.  (Id.).  The Judgment and Sentence is kept separate from the inmate's other papers.  (Id.). The "Reception Center Offender Personal Property Receipt," reflects that when Plaintiff arrived at the DOC, his "legal work" accompanied him.  (Dkt. # 9, Exh. M).

Plaintiff makes no allegations and provides no evidence of any actual injury stemming from Defendant Burgess' inspection of his legal papers.  Thus, the Court recommends that this claim be dismissed with prejudice.

        4.      <u>Intimidation Claim</u>

"[V]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under . . . Section 1983."  <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987), *quoting* <u>Collins v. Cundy</u>, 603 F.2d 825, 827 (10th Cir. 1979).  Plaintiff alleges that Defendant Greer interrogated and intimidated him during his transport to prison about a claim Plaintiff made against the County and told him that there would be grave repercussions if Plaintiff followed through with the claim. Defendant Greer states that it is his practice to have as little conversation during a transport as possible and denies making the statement to Plaintiff that "there would be grave reprocussions [sic] for this." (Dkt. # 41).  Defendant Greer was not aware at the time of the transport that Plaintiff had a claim or anticipated making a claim against Grays Harbor County and first learned of the claim when he was served with this lawsuit.  (Id.).

This lawsuit is evidence that Plaintiff's access to courts has not been denied and Plaintiff makes no allegation that he has been denied access.  As verbal harassment alone is not sufficient to state a claim and Plaintiff has introduced no evidence of a constitutional violation, the Court recommends that this claim be dismissed with prejudice.

### III. CONCLUSION

For the reasons stated above, the Court should **GRANT** the Grays Harbor Defendants' motion

REPORT AND RECOMMENDATION - 12

for summary judgment and dismiss Plaintiff's claims against them with prejudice. A proposed order accompanies this Report and Recommendation. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **December 15, 2006**, as noted in the caption.

DATED this  17th  day of November, 2006.

*/s/ Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13